[No. 4521.]

## A. T. GALLAGHER *v.* V. PINE.

SALE OF LAND BY MARRIED WOMAN.—An article of agreement made in 1849 between John Martin and his wife of the one part, and Hoppe and Marvin of the other part, by which the husband and wife grant, bargain and sell to the parties of the other part a tract of land, the separate property of the wife; and the parties of the other part bind themselves to lay out the land into town lots, and sell the same, and pay to the husband and wife one-half the proceeds, was sufficient under the law then in force to pass the wife's title to the land, without being acknowledged by her separate and apart from her husband, and was a conveyance of the title.

IDEM.—An indenture made afterwards between said husband and wife of the first part, and Hoppe and Marvin of the second part, and Burnett of the third part, by which it is agreed that Burnett shall be substituted in place of Marvin, and shall do and perform the stipulations in the agreement to be performed by Marvin, vested in Burnett the title which Marvin had held, and imposed on him the obligations of Marvin.

IDEM.—A conveyance afterwards made by the husband and wife of the land did not vest in the grantee any title, either legal or equitable, for the wife had parted with her title, and her only remedy was an action to compel the performance of the covenants.

APPEAL from the District Court, Twentieth Judicial District, County of Santa Clara.

Ejectment to recover about five acres of land situate in the county of Santa Clara, near Alviso, and being a portion of the Mexican grant known as the "Embarcadero of Alviso," made to Barselisa Bernal, by the Mexican nation, and confirmed to her by the United States, in 1857. In 1849, said Barselisa was the wife of John Martin, and on the 4th day of August she and her husband entered into an article of agreement, of which the following is a copy:

. KNOW ALL MEN BY THESE PRESENTS, that we, John Martin, Barselisa Bernal Martin, his wife, of the District of San Jose, in Upper California, of the one part, and Jacob D. Hoppe and Charles B. Marvin, of the Pueblo San Jose, in the District of California aforesaid, of the other part, have and by these presents do enter into the following articles of agreement:

ARTICLE FIRST. The said John Martin and Barselisa B. Martin, his wife, have, for and in consideration of the sum

of one dollar, to them in hand paid by the said Jacob D. Hoppe and Charles B. Marvin, the receipt whereof is hereby acknowledged, and for divers other considerations hereinafter mentioned, granted, bargained and sold, and by these presents do grant, bargain and sell unto the said Jacob D. Hoppe and Charles B. Marvin, a certain piece or parcel of land situate in said district; beginning at an alder-tree, standing on the west bank of the river Guadalupe, at the western extremity of the first large bend of said river above the house of said Martin; thence in direction of two lone trees and the house of Inigo to the second large slough; thence to the north with said slough to the said river Guadalupe; thence with the meanderings of said river to the place of beginning; being part of the rancho of said Martin, granted to him by the Mexican government.

ARTICLE SECOND. The said Hoppe and Marvin bind themselves, their heirs, executors, administrators and assigns, to lay out the said lands herein conveyed into town lots in such manner as they may deem expedient, as soon as shall be practicable, and to sell them at such time and price as they may deem best. They, the said Hoppe and Marvin, to be at all the expense of laying out said town, making sales, executing deeds, etc., and bind themselves to pay unto the said John Martin one-half of the amount for which said lots were actually sold.

ARTICLE THIRD. The said John Martin binds himself, his heirs, executors, administrators and assigns, that he will not sell any land from his farm, or in any way dispose of any part thereof in such manner as to injure the progress of the intended town site herein conveyed.

ARTICLE FOURTH. It is agreed that each of the said parties to these presents, the said John Martin and wife for themselves, and the said Hoppe and Marvin for themselves, shall have the choice of one of the said lots when so laid out in said town, to be held to them and to their heirs and assigns respectively.

ARTICLE FIFTH. It is agreed that the said Hoppe and Marvin have the exclusive right to control, to bargain and convey said town lots in such manner as they may deem best for the progress of the town.

To all the foregoing articles we severally bind ourselves, our heirs and assigns, this fourth day of August, 1849.

JOHN MARTIN.          [L. S.]

her
BARSELISA BERNAL ✕ MARTIN.          [L. S.]
mark.

J. D. HOPPE.          [L. S.]

CHARLES B. MARVIN.          [L. S.]

Sealed and delivered in presence of

ANTONIO M. PICO,
Alcalde.

A. F. DE SATACD.

The agreement was acknowledged before a notary, but the wife's acknowledgment was not taken separate and apart from that of her husband.

Alviso is situated at the head of the Bay of San Francisco, about forty miles south of San Francisco, and it was supposed at that time that it might become a large city. No consideration passed from Hoppe and Marvin to Martin and his wife. In December, 1849, the parties entered into the following agreement with Peter H. Burnett:

THIS INDENTURE, made and entered into this 1st day of December, in the year of our Lord, eighteen hundred and forty-nine, by and between John Martin and Barselisa Bernal Martin, his wife, of the first part, and Jacob D. Hoppe and Charles B. Marvin of the second part, and Peter H. Burnett of the third part, witnesseth: That whereas, on the fourth day of August, A. D. 1849, certain articles of agreement were made and entered into between the said Martin and wife of the one part, and the said Hoppe and Marvin of the other part, in which said articles of agreement certain things were stipulated by the parties respectively, which will more fully appear, reference being had to said articles of agreement, which are hereby expressly made a part of this instrument; and whereas the said Marvin, for the cause of bad health as well as for certain valuable consideration paid to him by said Burnett, has agreed, by consent of all parties, to substitute the said Burnett in his place and stead. Now, therefore, it is agreed by all the parties

to this instrument, that the said Burnett shall be substituted in the place and stead of the said Charles B. Marvin, to do and perform all the stipulations of said agreement not yet performed in reference to the lots not yet sold or deeded, and the said Burnett binds himself to do and perform all the acts that the said articles of agreement require said Marvin yet to do and perform. And it is also agreed by all the parties to this instrument, that, in pursuance of the fourth article of said articles of agreement, that the said Hoppe and Marvin shall have lot number seven (7) in block number twenty-five for their private use as laid down and prescribed in the plat of the town of Alviso, drawn by C. S. Lyman.

In witness whereof, we have hereunto set our hands and seals the day and year first aforesaid.

JOHN MARTIN.    [L. S.]

A ruego de Baselisa Bernal Martin por no saber firmar.

BASELISA BERNAL MARTIN,    [L. S.]
Per J. C. CONROY.

J. D. HOPPE.    [L. S.]

CHAS. B. MARVIN.    [L. S.]

PETER H. BURNETT.    [L. S.]

The above was acknowledged by the husband alone.

The first Legislature of California commenced its session on the 15th day of December, 1849, so that the Mexican law was in force when the contracts were made.

The defendant, in her answer, set up an equitable defense, based on the foregoing agreements and the facts, and also denied the allegations of the complaint.

Both the foregoing contracts were acknowledged and recorded. Burnett and Hoppe surveyed the land into lots, and laid out streets and squares and made maps of the same, and Burnett expended large sums of money in his efforts to have a city built on the land, but these efforts were futile. Hoppe died in April, 1853, and, after Burnett's substitution, he continued to claim the land under the agreement, making contracts for the same and paying taxes thereon. John Martin died in 1851, and Barselisa, his widow, married

George Frazer in 1855. On the 13th day of April, 1867, Frazer and his wife executed a deed of the demanded premises to the defendant Pine, for the consideration of twenty-five dollars per acre. The plaintiff, Gallagher, claimed under a conveyance from Burnett, made for a valuable consideration. This suit was commenced April 19, 1872. The plaintiff recovered judgment, and the defendant appealed.

*Archer & Lovell*, for the Appellant.

The papers by which it is claimed the legal title was conveyed to Hoppe, Marvin and Burnett, or some one of them, bear date in 1849. Their claim was never confirmed. The granting part of the instrument of August, 1849, contains no words of inheritance, nor contemplates even *assigns*. The other instrument has *no* words of conveyance whatever. Marvin thereby abandoned the enterprise, and Burnett was substituted for him in December, 1849. Hoppe died in 1853, and Burnett discontinued all efforts to establish the town in 1854. The attempt to build a town then having proved a failure, and the only object of, or consideration for said agreements to lay off town lots and sell them and build up a town having been abandoned, we submit that under such circumstances the agreement between Barselisa Bernal and Marvin and Hoppe, in 1849, does not convey the after-acquired legal title to Burnett or his assigns.

Neither of the papers of 1849 was ever acknowledged by Barselisa Bernal (who, at the time, was a married woman), so as to be effective. The second one of substitution was not acknowledged by her at all.

The first of the two instruments, if construed to be a conveyance, only vested in Marvin and Hoppe a life estate. No words of inheritance are used. Hoppe died, and neither he nor Marvin ever conveyed to Burnett. Burnett, by substitution, had not title, but only a power with Hoppe; when Hoppe died, the power without title did not survive. (Perry on Trusts, Secs. 284, 504, 505.)

The conveyance of title (if such at all), to Hoppe and Marvin was in trust. The trust was expressed in the same instrument, to wit, to sell the property as town lots. The

conveyance from Burnett to Love and plaintiff was not in execution of the trust or the power, but in violation thereof, and therefore of no effect. (See Civil Code, Sec. 870, and cases there cited.)

The power given to Marvin and Hoppe, and afterwards to Burnett, was personal; it could not be exercised by one, nor by assigns nor survivors. (Perry on Trusts, Sec. 504. See *Cole* v. *Wade*, 19 Vesey, 27.)

*J. H. Campbell,* for the Respondent.

The property granted in the trust deed of August, 1849, was the separate estate of Mrs. Martin, which, under the Mexican law, she had the power to dispose of as freely (the bare assent of her husband having been first obtained) as if she had been a *feme* sole "by any informal instrument, or possibly without any writing." (*Ingoldsby* v. *Juan*, 12 Cal. 575.)

Through an excess of prudence the husband in this case joined in the conveyance, and the instrument by which the conveyance was effected was more than sufficient to pass the title at the civil law, under which transfers were so easily accomplished. (Schmidt, Laws of Spain and Mexico, Arts. 596, 598; White's New Recopilacion, I, 193; Domat (Cushing's Ed.), paragraphs 259, 260; Escriche (Paris Ed. 1852), title Venta, p. 1529.

It cannot, we think, be successfully contended that the laws which gave to Mrs. Martin the right freely to dispose of her separate property, gave her at the same time immunity from the obligations usually attending such disposition under the same laws. No authority can be found to sustain such a position. One of these obligations, employed in every transfer of property, was that of warranting and defending the title of the property transferred, and this obligation was necessarily as binding upon married women who had aliened their separate property with the consent of their husbands, as upon others, and estopped the grantor and the heirs of the grantor from setting up an after-acquired title, or in any manner disturbing or contesting the title of the grantee, and further bound them to defend

against all suits brought to dispossess the grantees of such property. (Schmidt, Laws of Spain and Mexico, Art. 445; White's New Recopilacion, I, 193; Partidas, V, Title V, Law 32; Domat, paragraphs 268, 376, 390; *Schmitt* v. *Giovanari*, 43 Cal. 621.)

The instrument substituting Burnett in the place of Marvin, vested in Burnett the title which Marvin held under the original trust deed. That such was the intent of the parties, however apparent the inaccuracy of the language employed, a careful reading of the document in conjunction with the prior trust-deed leaves no doubt. It was, in effect, an assignment made with the written consent and participation of all the parties interested, by Marvin to Burnett, of the title and obligations of the former under the original trust-deed, and the court below so found. That Marvin so intended it is sufficiently obvious from the instrument itself. Such an assignment it is thought would, under the present law, be held to pass the title to land, and not merely to create an equity of title, and under the more liberal doctrine of transfer at the civil law the correctness of this proposition can be little doubted.

No words of inheritance were necessary in a conveyance, under the civil law, to pass the fee-simple titles to lands. In the case of deeds in trust, for the purpose of selling land, it was not necessary to insert words of inheritance even at common law, since, without the transmission of the fee the trust could not be executed, and the courts presumed that to have been intended, without which the grant would have been inoperative. (Perry on Trusts, Sec. 315.)

By the COURT:

The instrument made on the 4th of August, 1849, between Barselisa Bernal Martin and John Martin, her husband, of the one part, and J. D. Hoppe and C. B. Marvin of the other part, was sufficient under the law then in force to pass the title of a married woman to real estate. The instrument, as we construe it, transferred her title to the lands therein mentioned, to Hoppe and Marvin.

The purpose of the instrument executed by and between

the above-named parties and Peter H. Burnett, on the first day of December, 1849, was, in our opinion, to place Burnett, both in respect to the title to lands, and the covenants to be performed by Hoppe and Marvin, in the place of Marvin. The parties intended by that instrument to vest in Burnett the title then held by Marvin, and to accept from Burnett a covenant to perform the services which Marvin had covenanted to perform. Such performance on the part of Burnett would not be possible, unless he occupied Marvin's place in respect to the title—unless the title was vested in him. Our conclusion is, that the instrument executed on the 1st day of December, 1849, vested in Burnett the title then held by Marvin.

The conveyance subsequently made by Barselisa Bernal and her then husband, G. W. Frazer, to the defendant, of a portion of the lands, did not transfer any title, for after her conveyance to Hoppe and Marvin, no title, either legal or equitable, remained in her. She or her husband was entitled, under the instrument of the 4th day of August, 1849, to the one-half of the proceeds of the sale, and to have the property managed and disposed of according to the covenants therein contained; and a failure on the part of Hoppe and Burnett would give a right of action to Barselisa Bernal, if she is entitled to the benefits of the covenants; but her deed to the defendant of a portion of the lands did not vest in the latter any estate in the land, either legal or equitable.

The other points do not require any notice.

Judgment affirmed.

Mr. Chief Justice WALLACE did not express an opinion.